Argued and submitted July 10, 1991; reassigned April 7, decision of the Court of Appeals affirmed; judgment of the circuit court affirmed April 15, reconsideration denied May 25, 1993

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## CLINTON KEITH LAJOIE,
*Petitioner on Review.*

(CC 10-88-08977; CA A63706; SC S37935)

849 P2d 479

Michael V. Phillips, of Johnson, Clifton, Larson & Bolin, P.C., Eugene, argued the cause and filed the petition for petitioner on review.

Jas. Adams, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the response brief were Dave Frohnmayer, Attorney General, and Virginia Linder, Solicitor General, Salem.

GILLETTE, J.

Unis, J., dissented and filed an opinion in which Van Hoomissen and Fadeley, JJ., joined.

**GILLETTE, J.**

At issue in this case is whether an accused's failure to give statutorily mandated notice of his intention to offer evidence of the alleged victim's past sexual behavior requires a trial court to refuse to allow the accused to present such evidence at trial and, if it does, whether such a requirement is constitutional. Under the specific facts presented here, we hold that such a failure does so require and that the requirement is constitutional.

Defendant was charged with rape in the first degree, ORS 163.375, sodomy in the first degree, ORS 163.405, and sexual abuse in the first degree, ORS 163.427, involving a child under the age of 12 years. Seven days before the scheduled trial date, defendant made a written motion to offer evidence of the alleged victim's past sexual behavior under OEC 412(2).[1] The state moved to strike defendant's motion on the ground that it was not timely filed, relying on OEC 412(3), which requires the motion to be made "not later than 15 days" before the scheduled trial date. The trial court granted the state's motion, concluding that, because defendant's motion was untimely, the court was required to preclude evidence offered by defendant at trial of the alleged victim's past sexual behavior. Defendant attempted to introduce the same evidence during cross-examination of the state's witnesses, but the trial court precluded the cross-examination as an extension of its ruling that the evidence was inadmissible for failure to comply with the notice procedure of OEC 412. A jury convicted defendant of all three charges.

On appeal, defendant argued that OEC 412 does not apply to evidence elicited on cross-examination where the cross-examination is properly within the scope of the direct examination. Defendant also argued that preclusion of evidence as a mandatory sanction for failure to comply with the notice requirement of OEC 412 is unconstitutional under the Oregon and United States Constitutions. The Court of

---

[1] OEC 412, sometimes called Oregon's "Rape Shield Law," *State ex rel Davey v. Frankel*, 312 Or 286, 288 n 1, 823 P2d 394 (1991), is set out at pp 66-67, *infra*, in the text of this opinion.

Appeals affirmed without opinion. *State v. Lajoie*, 105 Or App 226, 804 P2d 1230 (1991).

We first consider defendant's argument that OEC 412 does not apply to evidence elicited on cross-examination. *See Priest v. Pearce*, 314 Or 411, 414, 840 P2d 65 (1992) ("As is customary under our methodology, we begin with the pertinent sub-constitutional law.").

OEC 412 provides:

"(1) Notwithstanding any other provision of law, in a prosecution for a crime described in ORS 163.355 to 163.425, or in a prosecution for an attempt to commit such a crime, reputation or opinion evidence of the past sexual behavior of an alleged victim of such crime is not admissible.

"(2) Notwithstanding any other provision of law, in a prosecution for a crime described in ORS 163.355 to 163.425, or in a prosecution for an attempt to commit such a crime, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is:

"(a) Admitted in accordance with paragraphs (a) and (b) of subsection (3) of this section; and

"(b) Is evidence that:

"(A) Relates to the motive or bias of the alleged victim; or

"(B) Is necessary to rebut or explain scientific or medical evidence offered by the state; or

"(C) Is otherwise constitutionally required to be admitted.

"(3)(a) If the person accused of committing rape, sodomy or sexual abuse or attempted rape, sodomy or sexual abuse intends to offer under subsection (2) of this section evidence of specific instances of the alleged victim's past sexual behavior, the accused shall make a written motion to offer such evidence not later than 15 days before the date on which the trial in which such evidence is to be offered is scheduled to begin, except that the court may allow the motion to be made at a later date, including during trial, if the court determines either that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that the issue to which such evidence relates has newly arisen in the case. Any motion

made under this paragraph shall be served on all other parties, and on the alleged victim through the office of the prosecutor.

"(b)    The motion described in paragraph (a) of this subsection shall be accompanied by a written offer of proof. If the court determines that the offer of proof contains evidence described in subsection (2) of this section, the court shall order a hearing in chambers to determine if such evidence is admissible. At such hearing the parties may call witnesses, including the alleged victim, and offer relevant evidence. Notwithstanding ORS 40.030(2), if the relevancy of the evidence which the accused seeks to offer in the trial depends upon the fulfillment of a condition of fact, the court, at the hearing in chambers or at a subsequent hearing in chambers scheduled for such purpose, shall accept evidence on the issue of whether such condition of fact is fulfilled and shall determine such issue.

"(c)    If the court determines on the basis of the hearing described in paragraph (b) of this subsection that the evidence which the accused seeks to offer is relevant and that the probative value of such evidence outweighs the danger of unfair prejudice, such evidence shall be admissible in the trial to the extent an order made by the court specifies evidence which may be offered and areas with respect to which the alleged victim may be examined or cross-examined. An order admitting evidence under this subsection may be appealed by the government before trial.

"(4)    For purposes of this section, the term 'past sexual behavior' means sexual behavior other than the sexual behavior with respect to which rape, sodomy or sexual abuse or attempted rape, sodomy or sexual abuse is alleged."

Neither defendant nor the state argues that the evidence at issue in this case is not evidence of the alleged victim's "past sexual behavior" within the meaning of OEC 412.[2] Defendant asserts, however, that failure to comply with the notice requirement of OEC 412 cannot be used to limit cross-examination, citing *State v. Reiter*, 65 Or App 304, 307, 672 P2d 56 (1983) ("Rule 412 is an evidentiary rule and does not by its terms or purpose limit a defendant's right to cross-examine an adverse witness.").

---

[2] At trial, defendant did make that argument with regard to some of the proffered evidence; however, defendant did not pursue the argument on appeal.

The wording of OEC 412 provides no basis for defendant's argument. OEC 412 is a blanket limitation on the introduction of "evidence" of an alleged victim's past sexual behavior in a prosecution for a sexual crime.[3] By its terms, OEC 412 does not distinguish between evidence offered on direct examination and evidence offered on cross-examination.

OEC 412(1) provides that "reputation or opinion evidence of the past sexual behavior of an alleged victim of [a sexual] crime is not admissible." No distinction is made between reputation or opinion evidence introduced on cross-examination and such evidence introduced on direct examination. This type of evidence simply is "not admissible," regardless of the method by which it is offered.

Similarly, OEC 412(2) provides that "evidence of a victim's past sexual behavior other than reputation or opinion evidence [*i.e.,* specific acts evidence] is also not admissible," with only three exceptions. Subject to compliance with the procedural requirements of OEC 412(3), such evidence is admissible only if it "(A) [r]elates to the motive or bias of the alleged victim; or (B) [i]s necessary to rebut or explain scientific or medical evidence offered by the state; or (C) [i]s otherwise constitutionally required to be admitted." OEC 412(2)(b). Each of those three exceptions applies to evidence that could be elicited on cross-examination. First, evidence relating to a victim's motive or bias could be elicited on cross-examination. Second, evidence to rebut or explain medical evidence could be elicited on cross-examination; indeed, the cross-examination at issue in this case was an attempt to elicit such evidence. Third, constitutional requirements can demand the opportunity to elicit evidence on cross-examination. *See Davis v. Alaska,* 415 US 308, 94 S Ct 1105, 39 L Ed 2d 347 (1974) (denial of right of cross-examination to show bias violated Sixth Amendment).

Further, the notice requirement of OEC 412(3) makes no distinction between evidence sought to be elicited on direct examination and that sought to be elicited on cross-

---

[3] OEC 412 applies only to "a prosecution for a crime defined in ORS 163.355 to 163.425, or in a prosecution for an attempt to commit such a crime." OEC 412(1). ORS 163.355 to 163.425 define various sexual crimes, such as rape, sodomy, and sexual abuse.

examination. OEC 412(3)(a) provides an exception from the notice requirement "if the court determines either that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that the issue to which such evidence relates has newly arisen in the case." If either of those conditions is met, the defendant can introduce evidence of past sexual behavior even though the notice requirement was not met. The defendant could introduce such evidence either by cross-examination of the state's witnesses or by direct examination of his own, and nothing in the wording of OEC 412(3)(a) suggests otherwise.

Finally, OEC 412(3)(c), which describes how the trial court is to determine the admissibility of evidence offered under OEC 412, expressly refers to evidence offered on cross-examination. If the trial court, following the hearing in chambers described in OEC 412(3)(b), determines that the evidence sought to be introduced is relevant and more probative than prejudicial, "such evidence shall be admissible in the trial to the extent an order made by the court specifies evidence which may be offered and areas with respect to which the alleged victim may be examined *or cross-examined.*" OEC 412(3)(c) (emphasis supplied). Thus, OEC 412(3) expressly directs the trial court to prescribe what evidence may be elicited, not only on direct examination, but on cross-examination as well, in a paragraph that treats the two kinds of examination as parallel.

Like the wording of OEC 412, the purposes sought to be served by OEC 412 also rebut defendant's argument as to the proper scope of the rule. "OEC 412 is a statute 'the principal purpose of [which] is to protect victims of sexual crimes from degrading and embarrassing disclosure of intimate details about their private lives.' " *State ex rel Davey v. Frankel,* 312 Or 286, 290, 823 P2d 394 (1991) (quoting Legislative Commentary to OEC 412, reprinted in Kirkpatrick, Oregon Evidence 202 (2d ed 1989)) (brackets in original). Another purpose of OEC 412 is "to encourage victims of sexual misconduct to report and assist in the prosecution of the crime * * * by preventing highly prejudicial evidence from reaching the jury and thus helping to protect jury impartiality." *Id.* at 300 (Unis, J., dissenting). "The prospect of having past sexual conduct divulged affects not

only the victim's decision to report [the sex crime], but also the victim's willingness to see the prosecution through." Note, *The Constitutionality of Statutorily Restricting Public Access to Judicial Proceedings: The Case of the Rape Shield Mandatory Closure Provision*, 66 BUL Rev 271, 276 (1986).

The notice requirement set forth in OEC 412(3) serves a number of functions:

> " 'The notice motion requirement essentially forces the defendant to tell the prosecutor and the court in advance of trial of his intention to use certain evidence and to ask that it be admitted at trial. * * * In addition, an offer of proof or depiction of what the defendant will attempt to prove must be provided so that all parties know what is at issue. The notice requirement prevents surprise to the prosecutor, the victim and the court. The prosecutor can weigh the evidence and determine whether or not he will object to its admission, confer with the victim on its truthfulness, and organize legal argument to oppose it if that is the chosen strategy. The notice requirement also signals the court of the importance of the issue since some judges have tended to assume the relevancy of prior sexual conduct. The procedure encourages judges to act less automatically.' "

23 Wright & Graham, Federal Practice and Procedure, 608 § 5390 (1980) (quoting Nat Inst L Enf & Crim Just, Forcible Rape: An Analysis of Legal Issues 26 (1978)).

Regarding a similar rape shield statute in Michigan, the Supreme Court of the United States has stated, "The notice-and-hearing requirement serves legitimate state interests in protecting against surprise, harassment, and undue delay." *Michigan v. Lucas*, 500 US ___, 111 S Ct 1743, 1748, 114 L Ed 2d 205 (1991). By requiring 15-day pre-trial notice, a rape shield statute like OEC 412 protects against surprise by allowing the prosecution time to investigate the defendant's evidence and to prepare arguments against its admission. The statute protects against undue delay by allowing time for the court to hold a hearing on the admissibility of the proposed evidence. As Justice Blackmun stated in a separate opinion concurring in the judgment in *Michigan v. Lucas, supra,* "a notice-and-hearing requirement is specifically designed to minimize trial delay by providing the trial court the opportunity to rule on the admissibility of the proffered evidence in advance of trial." 111 S Ct at 1749.

Most importantly, however, the rule protects against harassment. The "shield" in a rape shield statute like OEC 412 is for the benefit of the alleged victim. The trial of a sexual crime requires the alleged victim to discuss painfully intimate matters in front of strangers and to allow others to discuss these matters. A notice requirement such as the one contained in OEC 412(3) protects the alleged victim against surprise and needless anxiety by ensuring adequate warning of the extent of the ordeal that he or she will face at trial. Under OEC 412(3), if the fifteenth day before trial passes and the defendant has not filed a written motion to admit past sexual behavior evidence, then the alleged victim knows that, except under two relatively exceptional circumstances (the evidence is newly discovered or the issue is newly arisen), he or she will not be required at trial to discuss any intimate sexual matters beyond the criminal incident itself, nor to listen as others discuss those matters.

■ None of those purposes — the avoidance of surprise, the prevention of undue delay, and, foremost, the protection of the alleged victim — would be served by an interpretation of OEC 412 that rendered cross-examination immune from the rule's limitations and procedural requirements. To serve those purposes, OEC 412 must apply to evidence sought on cross-examination, as well as to that sought on direct examination. Because this interpretation is supported by the statute's language and best fulfills the statute's purposes, we hold that OEC 412, including the 15-day notice requirement of OEC 412(3), applies to evidence offered on direct examination *and* cross-examination.

■ We next consider the sub-constitutional question whether OEC 412 required preclusion as a mandatory sanction under the facts of this case. OEC 412(2) states that "evidence of a victim's past sexual behavior other than reputation or opinion evidence is * * * not admissible, unless such evidence * * * is * * * [a]dmitted in accordance with paragraphs (a) and (b) of subsection (3) of this section." OEC 412(3)(a) provides:

> "If the person accused * * * intends to offer under subsection (2) of this section evidence of specific instances of the alleged victim's sexual behavior, *the accused shall make a written motion* to offer such evidence *not later than 15 days*

*before the date on which the trial in which such evidence is to be offered is scheduled to begin*, except that the court may allow the motion to be made at a later date, including during trial, if the court determines either that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that the issue to which such evidence relates has newly arisen in the case."

(Emphasis supplied.) Under the literal words of OEC 412(2) and 412(3)(a), then, evidence of specific instances of an alleged victim's past sexual behavior is not admissible unless the defendant moves to introduce the evidence at least 15 days before trial or unless the evidence sought to be admitted falls within the stated exceptions for newly discovered evidence or evidence related to a newly arisen issue.

In this case, defendant admittedly failed to meet the 15-day notice requirement. And, although defendant argued that some of the evidence he sought to introduce related to a newly arisen issue, the trial court correctly concluded that the issue in question was present from the outset of the case. Consequently, under the literal words of OEC 412, the evidence defendant sought to introduce was "not admissible," and preclusion was mandated by the statute.

This brings us to defendant's constitutional argument. Defendant argues that the preclusion of evidence as a mandatory sanction for failure to comply with the notice requirement of OEC 412 violates the confrontation and compulsory process clauses of Article I, section 11, of the Oregon Constitution, and the Sixth Amendment to the Constitution of the United States. According to defendant, those constitutional provisions require a finding of a willful violation or of prejudice before the preclusion sanction may be exercised.

■ We address defendant's state constitutional claims first. *See Sterling v. Cupp*, 290 Or 611, 614, 625 P2d 123 (1981) ("The proper sequence is to analyze the state's law, including its constitutional law, before reaching a federal constitutional claim."). The pertinent state constitutional provision is Article I, section 11, of the Oregon Constitution, which provides:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed; to be heard by

himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor; provided, however, that any accused person, in other than capital cases, and with the consent of the trial judge, may elect to waive trial by jury and consent to be tried by the judge of the court alone, such election to be in writing; provided, however, that in the circuit court ten members of the jury may render a verdict of guilty or not guilty, save and except a verdict of guilty of first degree murder, which shall be found only by a unanimous verdict, and not otherwise; provided further, that the existing laws and constitutional provisions relative to criminal prosecutions shall be continued and remain in effect as to all prosecutions for crimes committed before the taking effect of this amendment."

Although this court has never before confronted the constitutionality, under Article I, section 11, of the preclusion sanction under OEC 412, it has confronted a similar question under the reciprocal discovery statutes. In *State v. Mai*, 294 Or 269, 280, 656 P2d 315 (1982), the court held that

"the preclusion sanction of ORS 135.865 is not inconsistent with Article I, section 11, of the Oregon Constitution, provided that the court finds that the prosecution is prejudiced by the defendant's failure to comply with the reciprocal discovery statutes, and provided further, that it appears that no sanction short of preclusion effectively will avoid the prejudice which the defendant's lack of compliance created."

That passage suggests that the constitutional requirements of *Mai* are twofold. First, *Mai* requires actual prejudice to the prosecution. Second, *Mai* requires a "least restrictive means" approach to sanctions. Not surprisingly, defendant relies (as does the dissent) on this passage; he argues that the trial court erred by not requiring a showing of prejudice to the prosecution from the late motion before exercising the preclusion sanction. We believe, however, that defendant and the dissent have mistaken the statement of the *holding* in *Mai* for the *rationale* of the case and that a true appreciation of the holding permits a result in this case that respects and complies with the legislative choice of preclusion as the sanction for violation of the notice requirement of OEC 412.

At an earlier point in the *Mai* opinion, the court stated its holding in a more general manner, as follows:

"In short, although we hold that the sanction procedures under the discovery statutes are permissible under Article I, section 11, we also hold that the statute must be applied in a reasonable manner by imposing the sanction which will infringe least upon the defendant's rights *and which will achieve the goal of the statute.*"

*Id.* at 277 (emphasis supplied). It is that passage that is the key to understanding *Mai* and to applying it in the present case, because that passage states the governing principle of *Mai*. The passage on which defendant relies, on the other hand, was derived *from the application of those principles to the specific statute in question there* — ORS 135.865. Because this case involves a different statute — OEC 412 — the principles behind *Mai* do not necessarily require the same result here.

■ *Mai* suggests two basic principles concerning the effect of Article I, section 11, on the preclusion sanction: (1) a statute providing for preclusion of evidence is not facially unconstitutional under that provision of the Oregon Constitution ("the sanction procedures under the discovery statutes are permissible under Article I, section 11"); and (2) a statute providing for preclusion of evidence is unconstitutional as applied only if a trial court employs the sanction of exclusion of evidence when a less drastic sanction will serve the same purpose as preclusion.

The latter inquiry necessarily is case- and statute-specific. In *Mai*, the statute at issue, ORS 135.865, provided a range of sanctions:

"Upon being apprised of any breach of the duty imposed by the provisions of ORS 135.805 to 135.873, the court may order the violating party to permit inspection of the material, or grant a continuance, or refuse to permit the witness to testify, or refuse to receive in evidence the material not disclosed, *or enter such other order as it considers appropriate.*"

(Emphasis supplied.) And, although it never expressly stated as much, the court in *Mai* implicitly identified *avoiding prejudice to the prosecution* as *the* purpose behind ORS 135.865. Based on the range of available sanctions and that

putative purpose of the statute, the court reasonably could conclude that, if one of the lesser sanctions available under ORS 135.865 would serve the purpose of the statute by avoiding any prejudice to the prosecution, preclusion of evidence was not constitutionally permissible.

■ Under the foregoing analysis, a correct application of the principles of *Mai* in the context of OEC 412 requires that this court determine (1) what other sanctions are available under the statute, (2) what the purpose of the notice requirement is, and (3) whether any lesser sanction in this case would serve that purpose fully. We turn to that analysis of OEC 412.

■ We consider first the sanctions that are available under the rule. Unlike ORS 135.865, OEC 412 does *not* provide a wide range of sanctions: The wording of OEC 412 provides for only a single sanction, *viz.*, preclusion. Thus, in the case of a late motion where the evidence is neither newly discovered nor related to a newly arisen issue, the court has two options: (1) preclude the evidence or (because this always is an available choice) (2) grant a continuance, which might have the effect of "recreating" the 15-day notice period required by OEC 412(3)(a). (We need not decide in this case whether following the second option would, in fact, reopen the 15-day period.) OEC 412 is not the same kind of statute that the court had under consideration in *Mai*.

We next consider the purposes of the notice requirement of OEC 412. As we already have discussed at some length in our examination of the scope of the rule, the purposes behind the notice requirement are to prevent unfair surprise, to avoid undue trial delay, *and, foremost, to protect the alleged victim*. The first two purposes may be said to be analogous to the "prejudice to the state" rationale underlying the statute in *Mai*. As such, they arguably would permit the same kind of balancing analysis used in *Mai* — a balancing of the extent of the defendant's need for the evidence against the state's need to avoid surprise and undue delay (*i.e.*, to avoid prejudice). But the third purpose — protection of the alleged victim — cannot be balanced. The legislature has already struck the balance between defendant and alleged victim in OEC 412. It has said that alleged victims are to be protected. If a defendant has evidence that will interfere with that

protection, the defendant must say so in a timely manner. Any other rule — any "balancing" beyond that already found in the statute — destroys the clarity and relative peace of mind that the rule was intended to confer on the alleged victim. Put differently: The legislature has looked this court in the eye and said, "We wish to exclude evidence about which there is not timely notice, unless a constitution flatly forbids our doing so." That is a permissible policy choice, couched as it is in terms that will relieve a defendant of the rule's requirements in situations that are beyond the defendant's control. Defendant in this case did not assert the existence of any such situation.

Finally, we consider whether a continuance — the only option other than preclusion even arguably available under these circumstances — would serve these purposes and "achieve the goal of the statute" as well as preclusion. Although a continuance might mitigate any prejudice due to surprise, it would aggravate trial delay and (as we have explained) would defeat the purpose of protecting the alleged victim from needless anxiety. As the legislature's selection of a single sanction reflects, only preclusion can accomplish all three purposes fully. Where, as here, *only* preclusion can "achieve the goal[s] of the statute," *State v. Mai, supra,* 294 Or at 277, Article I, section 11, of the Oregon Constitution, permits that sanction.[4]

Based on the foregoing analysis, we hold that the trial court's imposition of a sanction of preclusion for failure to comply with the notice requirement of OEC 412 does not violate this defendant's rights under the confrontation clause or the compulsory process clause of Article I, section 11, of the Oregon Constitution. The notice requirement of the rule is a reasonable condition on the defendant's right to present evidence.[5]

---

[4] This case does not involve — and we do not address — a situation in which a defendant obtains a continuance (for some reason other than to avoid the rule) that so postpones the date of trial that defendant's notice becomes timely. The variety of circumstances in which defendant might seek and the trial court might, in its discretion, choose to grant a continuance is too great to permit us to comment on the effect of such an event on the workings of OEC 412. (Of course, we assume that no trial judge would grant a continuance simply to thwart the purpose behind OEC 412.)

[5] Our disposition of the Oregon constitutional question on this ground means that we need not address the alternative ground that defendant *waived* his right to

We turn now to the same question under the federal constitution. Based on recent precedent from the Supreme Court of the United States, we reach the same conclusion under the Sixth Amendment that we reached under Article I, section 11: Preclusion of evidence does not violate this defendant's rights under the confrontation clause or the compulsory process clause of the Sixth Amendment, because the OEC 412 notice requirement is a reasonable condition on the defendant's right to present evidence.

The Sixth Amendment to the Constitution of the United States provides in part: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor * * *." In *Michigan v. Lucas, supra,* the Supreme Court addressed the interplay between the Sixth Amendment and a Michigan rape-shield statute. In *Lucas,* the Supreme Court made it clear that courts may, in some cases, employ the sanction of preclusion of evidence without violating the criminal defendant's Sixth Amendment rights to confront adverse witnesses and to present a defense.

The background to the Supreme Court's decision in *Michigan v. Lucas* is as follows. In Michigan, the rape-shield statute provides, in part, that if a defendant proposes to offer evidence of the victim's past sexual conduct with the defendant, he or she must file a written motion and an offer of proof within 10 days of arraignment. Mich Comp Laws § 750.520j (1979). The trial court may then order an in camera hearing to determine whether the evidence is admissible. *Id.* In *People v. Williams,* 95 Mich App 1, 289 NW2d 863 (1980), *rev'd on other grounds,* 416 Mich 25, 330 NW2d 823 (1982), the Michigan Court of Appeals held that the notice-and-hearing requirement was unconstitutional where it barred the defendant from offering evidence of past sexual conduct with the alleged victim. Seven years later, in *People v. Lucas,* 160 Mich App 692, 408 NW2d 431 (1987), the Michigan Court of Appeals followed its earlier opinion in *Williams.* The Supreme Court of the United States granted certiorari in *Lucas* "to determine whether the Michigan Court of Appeals'

---

offer the evidence in question by failing, without excuse, to comply with the notice requirement of OEC 412.

per se rule is consistent with our Sixth Amendment jurisprudence." *Michigan v. Lucas, supra*, 111 S Ct at 1746.

Because *Lucas* involved a per se rule against preclusion of evidence in a certain class of cases, the Court framed the issue before it very narrowly: "The sole question presented for our review is whether the legitimate interests served by a notice requirement can ever justify precluding evidence of a prior sexual relationship between a rape victim and a criminal defendant." 111 S Ct at 1747. The Court determined that the answer was "yes." According to the Court, "The notice-and-hearing requirement serves legitimate state interests in protecting against surprise, harassment, and undue delay. Failure to comply with this requirement may in some cases justify even the severe sanction of preclusion." 111 S Ct at 1748. The Court relied primarily on two earlier opinions in which it had concluded that evidence preclusion as a sanction for a discovery violation did not violate the Sixth Amendment: *Taylor v. Illinois*, 484 US 400, 108 S Ct 646, 98 L Ed 2d 798 (1988); and *United States v. Nobles*, 422 US 225, 95 S Ct 2160, 45 L Ed 2d 141 (1975).

Unfortunately, the *Lucas* Court declined to consider whether preclusion was justified in the case before it. Although the defendant had argued "that preclusion was an unconstitutional penalty *in this case*" (emphasis in original), the Court declined to address that question:

> "We express no opinion as to whether or not preclusion was justified in this case. The Michigan Court of Appeals, whose decision we review here, did not address whether the trial court abused its discretion on the facts before it. Rather, the Court of Appeals adopted a per se rule that preclusion is unconstitutional in all cases where the victim had a prior relationship with the defendant. That judgment was error. We leave it to the Michigan courts to address in the first instance whether Michigan's rape-shield statute authorizes preclusion and whether, on the facts of this case, preclusion violated Lucas' rights under the Sixth Amendment."

*Michigan v. Lucas, supra*, 111 S Ct at 1748. Nonetheless, the Court's opinion in *Lucas* and several of the cases on which the *Lucas* opinion relied permit us to fashion a satisfactory Sixth Amendment analysis for OEC 412.

As the Supreme Court stated in *Lucas*, a defendant's Sixth Amendment rights are not absolute: " '[T]he right to present relevant testimony is not without limitation. The right "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." ' " 111 S Ct at 1746 (quoting *Rock v. Arkansas*, 483 US 44, 55, 107 S Ct 2704, 97 L Ed 2d 37 (1987), which in turn quoted *Chambers v. Mississippi*, 410 US 284, 295, 93 S Ct 1038, 35 L Ed 2d 297 (1973)). According to the Court, "[r]estrictions on a criminal defendant's rights to confront adverse witnesses and to present evidence 'may not be arbitrary or disproportionate to the purposes they are designed to serve.' " 111 S Ct at 1747 (quoting *Rock v. Arkansas, supra*, 483 US at 56). And, as the Court stated in *Rock v. Arkansas*: "In applying its evidentiary rules a State must evaluate whether the interests served by a rule justify the limitation imposed on the defendant's constitutional right[s] * * *." 483 US at 56.[6]

Thus, to determine the constitutionality of preclusion under the Sixth Amendment, we must determine whether the purposes that OEC 412 is designed to serve justify the limitation that the rule imposes on a defendant's constitutional rights or whether, instead, that limitation is arbitrary or disproportionate to those purposes. We already have identified the purposes behind the notice requirement of OEC 412: preventing surprise to the prosecution and the alleged victim, avoiding undue trial delay, and protecting the alleged victim from needless anxiety concerning the scope of the evidence to be produced at trial. The limitation imposed is the entire procedural scheme discussed above: (1) the defendant must move to introduce the specific evidence at least 15 days before trial, except where (2) he or she did not discover the evidence (and could not have discovered it in the exercise of due diligence) or the evidence relates to an issue newly arisen in the case.

Are those procedural requirements justified, or are they "arbitrary or disproportionate" to the purposes they are

---

[6] *Rock* specifically referred to the defendant's "right to testify," because that case involved a per se rule against posthypnotic testimony. *Rock v. Arkansas*, 483 US 44, 55, 107 S Ct 2704, 97 L Ed 2d 37 (1987).

designed to serve? We conclude that those procedural requirements *are* justified and are neither arbitrary nor disproportionate to their intended purposes. The legislature has identified a specific type of evidence — past sexual behavior of an alleged victim of a sexual crime — the disclosure of which may be particularly "degrading and embarrassing." To protect the alleged victim, the legislature has created an elaborate and comprehensive scheme for the admission of this type of evidence. First, the legislature has decided that reputation and opinion evidence of the alleged victim's past sexual behavior is totally inadmissible. OEC 412(1). Second, the legislature has decided that evidence of specific instances of the alleged victim's past sexual behavior may be admitted only under very narrow circumstances. Before it can be admitted, the evidence must be carefully "screened" by the trial court to determine whether it is relevant and whether its probative value outweighs its prejudicial effect. To allow time for this screening process, which must include time for the prosecution to respond to the defendant's motion and time for the court to conduct a hearing, the legislature has chosen to set a 15-day pre-trial notice period. As we have explained, this notice period also serves the very important purpose of giving to the alleged victim fair warning as to the scope of any inquiry into the victim's past sexual activity.

In creating this scheme to protect the alleged victim, the legislature did not ignore the rights of the defendant. As the Legislative Commentary to OEC 412 states: "The rule balances the interests involved: the interest of the victim of a sexual crime in protecting a private life from unwarranted public exposure, and the defendant's interest in being able to present adequately a defense by offering relevant and probative evidence." Legislative Commentary to OEC 412, reprinted in Kirkpatrick, Oregon Evidence 202 (2d ed 1989). Moreover, the legislature created two exceptions to the requirement of 15 days' notice (the evidence is newly discovered or the issue is newly arisen), which apply when a defendant cannot comply for reasons beyond the defendant's control. As we have earlier noted, defendant in this case asserts no such reasons.

Based on the foregoing analysis, we conclude that the process required by OEC 412 for the admission of evidence of

past sexual behavior of an alleged victim of a sexual crime is neither arbitrary nor disproportionate to the purposes that it is intended to serve. The process established by OEC 412 is a reasonable condition on the defendant's exercise of the right to present evidence. This condition is justified by legitimate state interests, including especially the interests in avoiding undue trial delay and in protecting the alleged victims of sexual crimes from harassment. Moreover, the rule contains adequate mechanisms for excusing noncompliance in those situations in which the noncompliance occurs for reasons beyond the defendant's control. We therefore hold that preclusion of evidence of the complaining witness' prior sexual behavior under OEC 412 does not violate defendant's rights under the Sixth Amendment.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed.

**UNIS, J.,** dissenting.

This case was originally assigned to me. The following opinion did not garner enough votes to represent the majority; therefore, I publish it, with minor modifications and the addition of footnote 16, 316 Or at 93-94, as a dissenting opinion.[1]

Under OEC 412,[2] if a defendant intends to offer evidence of an alleged victim's past sexual behavior,[3] the defendant shall make a written motion and offer of proof no later than 15 days before the first scheduled day of trial. OEC 412(3)(a). In this case, defense counsel filed a written motion and offer of proof seven days before the first scheduled day of trial. The issue presented is whether defense counsel's failure to comply with the 15-day notice requirement or to satisfy one of the exceptions in OEC 412(3)(a) *automatically* required the trial court to impose the severe sanction of preclusion, *i.e.,*

---

[1] I borrow this approach from Justice O'Connell in *Baxter v. Baker*, 253 Or 376, 380, 451 P2d 456 (O'Connell, J., dissenting), *modified* 454 P2d 855 (1969).

[2] Although OEC 412 sometimes is called Oregon's "Rape Shield Law," *State ex rel Davey v. Frankel*, 312 Or 286, 288 n 1, 823 P2d 394 (1991), *id.* at 296 n 1 (Unis, J., dissenting), that statute applies to a range of sex-related crimes. *See infra*, note 8.

[3] "Past sexual behavior" is defined in OEC 412(4), set out in the text of this opinion, 316 Or at 84.

to preclude defendant from presenting such evidence at his criminal trial. I would hold that it did not.

After a jury trial, defendant was convicted of rape in the first degree, ORS 163.375, sodomy in the first degree, ORS 163.405, and sexual abuse in the first degree, ORS 163.427, involving a child under the age of 12 years. Seven days before the scheduled trial date, defense counsel submitted a written motion under OEC 412(2) to offer evidence of the alleged victim's past sexual behavior. The motion was accompanied by an offer of proof. The state moved to strike defendant's motion on the ground that it was not timely filed, relying on OEC 412(3)(a), which states that the motion shall be made "not later than 15 days" before the scheduled trial date. The trial court granted the state's motion, concluding that, because defendant's motion was untimely, the court was required to exclude evidence of the alleged victim's past sexual behavior.

Defendant attempted to introduce the same evidence during cross-examination of the state's witnesses, arguing that OEC 412 does not bar such cross-examination if it is within the scope of the direct examination. Defendant also argued that preclusion of evidence as a mandatory sanction for failure to comply with the notice requirement of OEC 412 violates his right of confrontation and his right to compulsory process under Article I, section 11, of the Oregon Constitution[4] and the Sixth Amendment to the Constitution of the United States.[5] The trial court precluded the cross-examination as an extension of its ruling that the evidence was inadmissible for failure to comply with the 15-day notice requirement of OEC 412. The Court of Appeals affirmed without opinion. *State v. Lajoie*, 105 Or App 226, 804 P2d 1230 (1991). Because we have not previously considered whether the failure of a criminal defendant to comply with the notice requirement of OEC 412 automatically requires

---

[4] Article I, section 11, of the Oregon Constitution provides in part: "In all criminal prosecutions, the accused shall have the right * * * to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor * * *."

[5] The Sixth Amendment to the Constitution of the United States provides in part: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him [and] to have compulsory process for obtaining witnesses in his favor * * *."

preclusion of defense evidence of the alleged victim's prior sexual behavior, we allowed review.

I first consider defendant's argument that OEC 412 does not apply to evidence elicited on cross-examination if it is within the scope of the direct examination.[6] *See Sterling v. Cupp*, 290 Or 611, 614, 625 P2d 123 (1981) (the proper sequence is to analyze the state's law before reaching state and then federal constitutional claims).

OEC 412 provides:

"(1)    Notwithstanding any other provision of law, in a prosecution for a crime described in ORS 163.355 to 163.425, or in a prosecution for an attempt to commit such a crime, reputation or opinion evidence of the past sexual behavior of an alleged victim of such crime is not admissible.

"(2)    Notwithstanding any other provision of law, in a prosecution for a crime described in ORS 163.355 to 163.425, or in a prosecution for an attempt to commit such a crime, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is:

"(a)    Admitted in accordance with paragraphs (a) and (b) of subsection (3) of this section; and

"(b)    Is evidence that:

"(A)    Relates to the motive or bias of the alleged victim; or

"(B)    Is necessary to rebut or explain scientific or medical evidence offered by the state; or

"(C)    Is otherwise constitutionally required to be admitted.

"(3)(a)    If the person accused of committing rape, sodomy or sexual abuse or attempted rape, sodomy or sexual abuse intends to offer under subsection (2) of this section evidence of specific instances of the alleged victim's past sexual behavior, the accused shall make a written motion to offer such evidence not later than 15 days before the date on which the trial in which such evidence is to be offered is scheduled to begin, except that the court may allow the motion to be made at a later date, including during trial, if

---

[6] *See* OEC 611(2) (stating standard for scope of cross-examination).

the court determines either that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that the issue to which such evidence relates has newly arisen in the case. Any motion made under this paragraph shall be served on all other parties, and on the alleged victim through the office of the prosecutor.

"(b)    The motion described in paragraph (a) of this subsection shall be accompanied by a written offer of proof. If the court determines that the offer of proof contains evidence described in subsection (2) of this section, the court shall order a hearing in chambers to determine if such evidence is admissible. At such hearing the parties may call witnesses, including the alleged victim, and offer relevant evidence. Notwithstanding ORS 40.030(2) [Rule 104(2)], if the relevancy of the evidence which the accused seeks to offer in the trial depends upon the fulfillment of a condition of fact, the court, at the hearing in chambers or at a subsequent hearing in chambers scheduled for such purpose, shall accept evidence on the issue of whether such condition of fact is fulfilled and shall determine such issue.

"(c)    If the court determines on the basis of the hearing described in paragraph (b) of this subsection that the evidence which the accused seeks to offer is relevant and that the probative value of such evidence outweighs the danger of unfair prejudice, such evidence shall be admissible in the trial to the extent an order made by the court specifies evidence which may be offered and areas with respect to which the alleged victim may be examined or cross-examined. An order admitting evidence under this subsection may be appealed by the government before trial.

"(4)    For purposes of this section, the term 'past sexual behavior' means sexual behavior other than the sexual behavior with respect to which rape, sodomy or sexual abuse or attempted rape, sodomy or sexual abuse is alleged.''

Neither party argues that the evidence that defendant sought to introduce in this case under OEC 412 is not evidence of the alleged victim's "past sexual behavior" within the meaning of OEC 412.[7] Defendant argues, however, that the notice requirement of OEC 412 cannot be used to limit

---

[7] At trial, defendant did make that argument with regard to some of the proffered evidence; however, he did not pursue the argument on appeal.

cross-examination that is within the scope of direct examination, citing *State v. Reiter*, 65 Or App 304, 307, 672 P2d 56 (1983) ("[r]ule 412 is an evidentiary rule and does not by its terms or purpose limit a defendant's right to cross-examine an adverse witness").

The language of OEC 412 provides no basis for making the distinction that defendant asserts. OEC 412 is a blanket limitation on the introduction of evidence of an alleged victim's past sexual behavior for a sexual crime.[8] OEC 412(1) provides that "reputation or opinion evidence of the past sexual behavior of an alleged victim of [a sexual] crime is not admissible." By its terms, OEC 412 does not distinguish between evidence of the alleged victim's past sexual behavior offered on direct examination and such evidence elicited on cross-examination. Reputation or opinion evidence simply is "not admissible" under OEC 412, regardless of whether it is offered during direct examination or cross-examination.

Similarly, OEC 412(2) provides that "evidence of a victim's past sexual behavior other than reputation or opinion evidence [*i.e.*, specific instances of conduct evidence] is also not admissible," with only three exceptions in OEC 412(2)(b). Subject to compliance with the procedural requirements of OEC 412(3), such evidence is admissible only if it "(A) [r]elates to the motive or bias of the alleged victim; or (B) [i]s necessary to rebut or explain scientific or medical evidence offered by the state; or (C) [i]s otherwise constitutionally required to be admitted." OEC 412(2)(b).[9] Each of those exceptions applies to evidence that could be elicited on cross-examination. First, evidence relating to an alleged victim's motive or bias could be elicited on cross-examination. Second, evidence to rebut or explain medical evidence could be elicited on cross-examination; indeed, the cross-examination at issue in this case was an attempt to elicit such evidence. Third, constitutional requirements can demand the

---

[8] OEC 412 applies only to "a prosecution for a crime defined in ORS 163.355 to 163.425, or in a prosecution for an attempt to commit such a crime[.]" OEC 412(1). ORS 163.355 to 163.425 define various sexual crimes, such as rape, sodomy, and sexual abuse.

[9] The exceptions "are not mutually exclusive. Evidence admissible under the first two [exceptions] may also be constitutionally required to be admitted." Kirkpatrick, Oregon Evidence 203 (2d ed 1989).

opportunity to elicit evidence on cross-examination. *See Davis v. Alaska*. 415 US 308, 94 S Ct 1105, 39 L Ed 2d 347 (1974) (denial of right of cross-examination to show bias violates Sixth Amendment to the United States Constitution); *Delaware v. Van Arsdall*, 475 US 673, 106 S Ct 1431, 89 L Ed 2d 674 (1986) (trial court violated criminal defendant's confrontation clause rights by prohibiting defendant from inquiring into possibility of bias by a prosecution witness as a result of the state dismissing the witness's pending public intoxication charge); *Olden v. Kentucky*, 488 US 227, 109 S Ct 480, 102 L Ed 2d 513 (1988) (limitation on cross-examination in sexual assault case that prevented inquiry as to the cohabitation of complaining witness with a third party at time of trial violated defendant's Sixth Amendment confrontation rights).

Further, the notice requirement of OEC 412(3)(a) makes no distinction between evidence sought to be elicited on direct examination and evidence sought to be elicited on cross-examination. OEC 412(3)(a) provides an exception from the notice requirement "if the court determines either that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that the issue to which such evidence relates has newly arisen in the case." If either of those conditions is met, the trial court may allow a defendant to introduce evidence of the alleged victim's past sexual behavior that is admissible under OEC 412, even though the notice requirement was not met. Such evidence, if allowed, may be introduced either by cross-examination of the state's witnesses or by direct examination of defendant's own witnesses, and nothing in the language of OEC 412(3)(a) suggests otherwise.

OEC 412(3)(c), which describes how the trial court is to determine the admissibility of evidence offered under OEC 412, expressly refers to evidence offered on cross-examination. If the trial court, following the hearing in chambers described in OEC 412(3)(b), determines that the evidence sought to be introduced is relevant, falls within one of the three exceptions stated in OEC 412(2)(b), and is more probative than unfairly prejudicial, "such evidence shall be admissible in the trial to the extent an order made by the court specifies evidence which may be offered and areas with

respect to which the alleged victim may be examined *or cross-examined*." OEC 412(3)(c) (emphasis added). Thus, in a subsection that treats the two kinds of examination as parallel, OEC 412(3) expressly directs the trial court to prescribe what evidence may be elicited, not only on direct examination, but on cross-examination as well.

Like the wording of OEC 412, the purposes sought to be served by OEC 412 also rebut defendant's argument as to the proper scope of the rule. OEC 412 recognizes the privacy and dignity of rape victims. Provisions of OEC 412 were adopted specifically " 'to protect victims of sexual crimes from the degrading and embarrassing disclosure of intimate details about their private lives.' " *State ex rel Davey v. Frankel*, 312 Or 286, 823 P2d 394 (1991) (quoting Commentary to OEC 412, reprinted in Kirkpatrick, Oregon Evidence 202 (2d ed 1989)). Another purpose of OEC 412 is "to encourage [avoid discouraging] victims of sexual misconduct to report and assist in the prosecution of the crime not only by preventing highly prejudicial evidence from reaching the jury and thus helping to protect jury impartiality, but also by preventing victims from having their past sexual history exposed to the public." *Id.* at 300 (Unis, J., dissenting). " 'The prospect of having past sexual conduct divulged affects not only the victim's decision to report [the sex crime], but also the victim's willingness to see the prosecution through.' " *Id.* (quoting Note, *The Constitutionality of Statutorily Restricting Public Access to Judicial Proceedings: The Case of the Rape Shield Mandatory Closure Provision*, 66 Boston Univ L Rev 271, 276 (1986)). The purposes sought to be served by the rule are deemed to override whatever marginal relevance the sexual history of the alleged victim might have, except in the three situations specified in OEC 412(2)(b), discussed above.

The notice requirement set forth in OEC 412(3)(a) serves a number of functions. Professors Wright and Graham explain those functions with respect to FRE 412, a rape shield statute on which OEC 412 is based:[10]

"The notice motion requirement essentially forces the defendant to tell the prosecutor and the court in advance of trial of

---

[10] *See* Commentary to OEC 412, reprinted in Kirkpatrick, *supra*, at 201 ("[t]he rule [OEC 412] is based on Rule 412 of the Federal Rules of Evidence").

his intention to use certain evidence and to ask that it be admitted at trial. * * * In addition, an offer of proof or depiction of what the defendant will attempt to prove must be provided so that all parties know what is at issue. The notice requirement prevents surprise to the prosecutor, the victim and the court. The prosecutor can weigh the evidence and determine whether or not he will object to its admission, confer with the victim on its truthfulness, and organize legal argument to oppose it if that is the chosen strategy. * * * This procedure encourages judges to act less automatically." Wright and Graham, 23 Federal Practice and Procedure 608, § 5390 (quoting Nat. Inst. L. Enf. & Crim. Just., Forcible Rape: An Analysis of Legal Issues 26 (1978)).

Regarding Michigan's similar rape shield statute, the Supreme Court of the United States has stated that "[t]he Michigan statute represents a valid legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy. The statute also protects against surprise to the prosecution." *Michigan v. Lucas*, 500 US ___, 111 S Ct 1743, 1746, 114 L Ed 2d 205 (1991). The notice requirement permits a prosecutor to investigate the defendant's evidence and to prepare arguments against its admission. 111 S Ct at 1746-47. The statute protects against undue delay by allowing time for the trial court to hold a hearing on the admissibility of the proposed evidence. Also, the notice requirement allows the court, before the trial begins, to determine whether the evidence falls within one of the three exceptions in OEC 412(2)(b) and, if so, whether the probative value of the evidence outweighs its possible unfair prejudicial effect. As Justice Blackmun stated in a separate concurring opinion in *Michigan v. Lucas, supra*, "a notice-and-hearing requirement is specifically designed to minimize trial delay by providing the trial court an opportunity to rule on the admissibility of the proffered evidence in advance of trial."[11] 111 S Ct at 1749 (Blackmun, J., concurring in the judgment).

None of the purposes — the protection against surprise, harassment, unnecessary invasions of privacy, undue delay, and providing the trial court with an opportunity to determine the admissibility of the proffered evidence —

---

[11] OEC 412(3)(c) is designed to exclude irrelevant and unfairly prejudicial evidence.

would be served by an interpretation of OEC 412 that rendered cross-examination immune from the rule's procedural requirements and limitations. To serve those purposes, OEC 412 must apply to evidence sought on cross-examination, as well as to that sought on direct examination. Because this interpretation is supported by the statute's language and best fulfills the statute's purposes, OEC 412, including the notice requirement of OEC 412(3)(a), applies to evidence that a defendant intends to offer on direct examination *and* on cross-examination.

I next consider the question whether, under the record in this case, OEC 412 requires preclusion as a mandatory sanction.

OEC 412(3)(a) provides that, if a defendant intends to offer evidence of the alleged victim's past sexual behavior, "the accused shall make a written motion to offer such evidence [which shall be accompanied by a written offer of proof, OEC 412(3)(b)], not later than 15 days before the date on which the trial in which such evidence is to be offered is scheduled to begin," to be followed by a hearing in chambers to discuss the admissibility of the evidence. As previously stated, OEC 412(3)(a) provides an exception from the 15-day notice requirement "if the court determines either that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that the issue to which such evidence relates has newly arisen in the case." OEC 412 does not state expressly what sanction is applied for noncompliance with the 15-day notice requirement.

The trial in this case was originally set to begin on August 29, 1989. It was rescheduled twice at the request of the state, and began on October 31, 1989. Defendant provided a written motion to offer evidence of the victim's past sexual behavior and an affidavit on October 24, seven days before the first scheduled day of trial. Defendant, therefore, admittedly failed to meet the 15-day notice requirement. And, although defendant argued that some of the evidence he sought to introduce related to a newly-arisen issue, the trial court correctly concluded that the issue in question was present from the outset of the case.

At trial and on appeal, defendant argued that mandatory preclusion of the evidence of the alleged victim's past sexual behavior that he sought to introduce violated his right of confrontation and his right to compulsory process under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the Constitution of the United States.

In *State v. Mai*, 294 Or 269, 277, 656 P2d 315 (1982), this court considered whether a sanction precluding the defendant from introducing evidence for defendant's violation of reciprocal discovery statutes violated Article I, section 11, of the Oregon Constitution. The specific question in *State v. Mai, supra*, was "whether the preclusion sanction of ORS 135.865 [was] an unconstitutional limitation upon the [defendant's] right to obtain the testimony of a witness." 294 Or at 273. This court concluded that the compulsory process clause in Article I, section 11, of the Oregon Constitution "protects both the [defendant's] right to the attendance of the witness and the testimony of the witness," 294 Or at 272, and that Oregon's compulsory process clause is to be construed in the same way that the Supreme Court of the United States construed the virtually identical federal counterpart in *Washington v. Texas*, 388 US 14, 87 S Ct 1920, 18 L Ed 2d 1019 (1967). 294 Or at 272.

In *Washington v. Texas, supra*, the Supreme Court of the United States held that the provisions of the Sixth Amendment's compulsory process are binding on the states as a component of the Fourteenth Amendment's Due Process Clause, *id.* at 17-19, and struck down a state statute that rendered persons charged as principals, accomplices, or accessories in the same crime incompetent to testify as witnesses for one another, *id.* at 23. By preventing the defendant from having the benefit of his accomplice's testimony, the Court concluded that "the State *arbitrarily* denied him the right to put on the stand a witness * * * whose testimony would have been relevant * * * to the defense." *Id.*

In *State v. Mai, supra*, this court stated that "the fundamental right that the [state] compulsory process clause aims to protect is 'the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth

lies.' " 294 Or at 274 (quoting *Washington v. Texas, supra*, 388 US at 19).[12] In *State v. Mai, supra*, this court said:

> "There can be no denying that the imposition of the preclusion sanction may result in the defendant's being unable to call witnesses whose testimony might be relevant * * * and exculpatory. Therefore, the [preclusion] *sanction should be imposed only when no lesser sanction would accomplish the aim of the statute, and then only if the state would be prejudiced if the witness or witnesses were permitted to testify even though the statute had not been complied with." Id.* at 277 (emphasis added).

This court concluded:

> "We hold that the preclusion sanction of ORS 135.865 is not inconsistent with Article I, section 11, of the Oregon Constitution, *provided that the court finds that the prosecution is prejudiced by the defendant's failure to comply with the reciprocal discovery statutes, and provided further, that it appears that no sanction short of preclusion effectively will*

---

[12] In *Chambers v. Mississippi*, 410 US 284, 302, 93 S Ct 1038, 35 L Ed 2d 297 (1973), the Supreme Court invalidated a state's hearsay rule on the ground that it abridged the defendant's right to "present witnesses in his own defense." The determination to exclude defense evidence cannot be made mechanistically, *i.e.*, it must be made only after a careful fact-specific weighing of the competing government and individual defendant's interests. *Id.* The Court chose to rest its analysis on defendant's Fourteenth Amendment due process right to a fair trial, but in finding defendant's due process rights to have been violated relied on its prior construction of the Sixth Amendment rights to confrontation and compulsory process. "Few rights," said the Court, "are more fundamental than that of an accused to present witnesses in his own defense." *Id.* at 302 (citing, *e.g., Washington v. Texas*, 388 US 14, 19, 87 S Ct 1920, 18 L Ed 2d 1019 (1967)).

In *Rock v. Arkansas*, 483 US 44, 107 S Ct 2704, 97 L Ed 2d 37 (1987), the Supreme Court stated that, although the right of a criminal defendant "to present relevant testimony is not without limitation," *id.* at 55, "a State * * * may not apply a rule of evidence that permits a witness to take the stand, but arbitrarily excludes material portions of his testimony." *Id.* In *Rock v. Arkansas*, the Court held that a criminal defendant's constitutional right to testify may not be barred by a *per se* rule against hypnotically-refreshed testimony, but such testimony must be evaluated for reliability in each case. *Id.* at 62.

*See also Taylor v. Illinois*, 484 US 400, 411, 108 S Ct 646, 98 L Ed 2d 798 (1988) ("[t]he defendant's right to compulsory process is itself designed to vindicate the principle that the 'ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts' ") (quoting *United States v. Nixon*, 418 US 683, 709, 94 S Ct 3090, 41 L Ed 2d 1039 (1974)).

Nothing in the record in this case suggests that defense counsel's failure to comply with the notice requirement was the result of "willful misconduct" or was designed to obtain a "tactical advantage."

*avoid the prejudice which the defendant's lack of compliance created." Id.* at 280 (emphasis added).[13]

In *State v. Ben,* 310 Or 309, 798 P2d 650 (1990), the defendant was convicted of various criminal offenses. Defense counsel violated ORS 135.585 to ORS 135.873, Oregon's reciprocal discovery statutes, when he failed to disclose the names of two defense witnesses until the morning of the trial and when he instructed witnesses not to speak to the prosecutor unless he was present. As a sanction for noncompliance with the discovery statutes, the trial court imposed the preclusion sanction — a sanction expressly made available to the court by the statute[14] — and refused to allow the testimony of the two defense witnesses. Nothing in the record indicated that prejudice to the state had in fact occurred. *State v. Ben, supra,* 310 Or at 318. Additionally, it did not appear from the record, and the trial court made no pertinent findings, that no sanction short of preclusion effectively would have avoided the prejudice that the defense counsel's lack of compliance with the discovery statute created.[15] *Id.* This court reversed the defendant's convictions and held that the trial court erred in imposing the preclusion sanction and that that error required a new trial. "Courts may only preclude [defense] testimony," this court said, "when to do so

---

[13] In *State v. Mai,* 294 Or 269, 277-78, 656 P2d 315 (1982), this court upheld preclusion of witnesses where defense counsel refused to disclose the witness list as required by the reciprocal discovery statute, and, after the trial court granted recess, defense counsel blocked interviews of a witness that were to have taken place during recess.

[14] ORS 135.865, at issue in *State v. Mai, supra,* and *State v. Ben,* 310 Or 309, 798 P2d 650 (1990), provided:

"Upon being apprised of any breach of the duty imposed by the provisions of ORS 135.805 to 135.873, the court may order the violating party to permit inspection of the material, or grant a continuance, or refuse to permit the witness to testify, or refuse to receive in evidence the material not disclosed, or enter such other order as it considers appropriate."

Thus, the statute specifically authorized preclusion as a sanction, and yet this court held that the preclusion sanction was constitutional only under certain circumstances.

[15] In *State v. Ben, supra,* 310 Or at 319, this court stated:

"[A]s the United States Supreme Court observed in *Taylor v. Illinois,* 484 US 400, 418, 108 S Ct 646, 98 L Ed 2d 798, *reh den* 485 US 983, 108 S Ct 1283, 99 L Ed 2d 494 (1988), in order for the adversary process to function effectively, the attorney must speak for the client when responding to discovery and the client must, at least for the purposes of that trial, accept the consequences of the attorney's decisions."

achieves the purpose of the discovery statute *and the other party [state] has been prejudiced.*" *Id.* at 316-17 (emphasis added). The effect of the trial court's error, this court held, "was to deny defendant a fair trial. * * * Erroneously preventing defendant from offering both direct and circumstantial evidence supporting his version of the facts struck at the heart of his [defense]." *Id.* at 319.

In *State v. Burdge,* 295 Or 1, 10 n 8, 664 P2d 1076 (1983), this court stated that "when our state processes conflict with a fundamental federal constitutional right the state process must yield" (citing *Washington v. Texas, supra*). In *State v. Burdge, supra,* this court held that exclusion of a defense witness's testimony in a criminal case as a sanction was impermissible where a defense witness violated stipulation of counsel to exclude witnesses or OEC 615 that governs exclusion of witnesses from the courtroom. This court reasoned that (1) "exclusion of a [defense] witness [in a criminal case] is too grave a sanction where the violation was not intentional and not procured by the connivance of counsel or for some improper motive," 295 Or at 14 (adopting reasoning in *United States v. Schaefer,* 299 F2d 625 (7th Cir), *cert den* 370 US 917 (1962)), and (2) "[r]efusal to allow defense witnesses to testify for violation of an exclusion order should be imposed only when necessary to preserve the integrity of the fact-finding process and requires that the competing interests be closely examined," *id.* (citing *Berger v. California,* 393 US 314, 315, 89 S Ct 540, 21 L Ed 2d 508 (1969)).

*State v. Mai, supra, State v. Burdge, supra,* and *State v. Ben, supra,*[16] make it clear that, although there are

---

[16] *State v. Mai, supra,* was an opinion authored by a member of the present majority and joined by one other justice in the present majority. Chief Justice Lent, joined by Justice Linde, dissented because they would have held that imposition of the preclusion sanction against a criminal defendant for a failure to comply with the reciprocal discovery statutes is inconsistent with our most basic constitutional principles:

"I agree with the majority that Section 11 of Article I of the Oregon State Constitution guarantees to a defendant not only the right to have process to compel witnesses to attend his trial but the right to have them testify. I must dissent, however, from the majority's holding that the legislature can preclude a defendant's witness from testifying because defendant's counsel did not allow discovery." *State v. Mai, supra,* 294 Or at 280 (Lent, C. J., dissenting).

*State v. Burdge,* 295 Or 1, 664 P2d 1076 (1983), was a unanimous six-justice opinion, joined by two members of the present majority. *State v. Ben, supra,* was a unanimous

instances in which the preclusion sanction may be employed,[17] trial courts are not to impose the preclusion sanction against defendant in a criminal case mechanistically. Because the standards or safeguards that this court required in those cases are not provided in OEC 412,

---

opinion by this court less than three years ago, authored by the author of the present majority and joined by two other members of the present majority and the two justices joining this dissent in this case.

The majority fails to heed its own holdings in these three cases. Indeed, based on *State v. Mai* and ignoring *State v. Burdge* and *State v. Ben*, the majority in this case states that "a statute providing for preclusion of evidence is *unconstitutional* as applied only if a trial court employs the preclusion sanction *when a less drastic sanction will serve the same purpose as preclusion.*" 316 Or at 74 (emphasis added). Thus, even according to the majority, because preclusion is unconstitutional when a less drastic sanction will serve the same purpose as preclusion, a statute which does not provide for less drastic sanctions is in jeopardy. Faced with a constitutional challenge to such a statute, this court's alternatives are either (1) to find a saving construction of the statute to provide for less drastic sanctions, thereby construing the statute in a way that makes it constitutional, or (2) to declare the statute *unconstitutional*. Instead, the majority's approach is (1) to consider the less drastic sanctions available or "arguably available" in the statute and, concluding that those sanctions do not "accomplish all three purposes [of the statute] fully," (2) to conclude, therefore, that the statute is *constitutional*. 316 Or at 76. Surely the majority does not really mean that the legislature can select a purpose for a statute and then, *ipso facto*, any sanction that the legislature selects to achieve that purpose is constitutional if the legislature did not see fit to also provide for a less severe sanction that fully achieves the same purpose. Yet, that is the majority's approach to this case.

The majority determines that issuing a continuance would not be an appropriate result because a continuance "would aggravate trial delay and * * * would defeat the purpose of protecting the alleged victim from needless anxiety." 316 Or at 76. If that is true, the prosecution had already "defeat[ed] the purpose of protecting the alleged victim from needless anxiety," because the trial had already been rescheduled twice at the request of the state, 316 Or at 89, a fact conveniently overlooked by the majority. I do not intend to minimize the significance of that purpose, but it must be considered in conjunction with other rights and interests at stake which, as a constitutional matter, means that this purpose cannot be the basis, as the majority holds, for mechanically applying preclusion as a sanction for violating the 15-day notice requirement.

It is also interesting to note that defendant argues in his brief that, "[i]n considering preclusion in the context of this case, it is noted that there is no claim of prejudice, no claim of additional embarrassment to the alleged victim, and no effort to determine whether the purposes of the statute could be vindicated by methods other than preclusion." The state's response in its brief is that "prejudice to the prosecution is inherent in violation of the notice rule," with no attempt to argue that there was actual prejudice.

[17] In *Michigan v. Lucas*, 500 US ___, 111 S Ct 1743, 114 L Ed 2d 205 (1991), which involved the converse of the situation presented in this case, the Supreme Court of the United States also stated that in some instances preclusion would not violate the federal constitution. The Court acknowledged its holding in *Taylor v. Illinois, supra*, however, that "alternative sanctions would be 'adequate and appro-

interpreting OEC 412 to require automatic preclusion of defense evidence from a criminal trial for the defense counsel's failure to comply with the 15-day notice requirement would violate Article I, section 11, of the Oregon Constitution.

Our obligation is to construe OEC 412, if possible, so as to satisfy the constitution, *i.e.*, our obligation is to construe OEC 412, if possible, in a manner that protects the admission of constitutionally-mandated evidence.[18] We note that "[t]his court is committed to the proposition that statutes are to be construed so as to satisfy the constitution unless no other construction is possible." *Roberts v. Mills*, 290 Or 441, 447, 622 P2d 1094 (1981). *See also State v. Edgmand*, 306 Or 535, 540, 761 P2d 505 (1988) (court is to preserve the legislature's intended purpose to the extent that the statute can be construed to avoid constitutional problems).

The standards or safeguards that this court articulated in *State v. Mai, supra, State v. Burdge, supra,* and *State v. Ben, supra,* provide the framework for a constitutionally saving construction of OEC 412. Applying that framework, we construe OEC 412 to permit courts to preclude defense evidence in a criminal case for failure of defense counsel to comply with the notice requirement in OEC 412(3)(a) only when (1) to do so achieves the purposes of the statute, the violation is prejudicial to the prosecution, and no sanction short of preclusion effectively will avoid the prejudice to the prosecution created by the violation, or (2) to do so is necessary to preserve the integrity of the factfinding process.[19] The

---

priate in most cases.' " *Michigan v. Lucas, supra,* 111 S Ct at 1748 (quoting *Taylor v. Illinois, supra,* 484 US at 413). In *Lucas,* the Supreme Court determined that a rule that preclusion of defense evidence for violating a notice and hearing requirement of the Michigan rape shield law was *per se* unconstitutional was a too-rigid application of the Sixth Amendment to the Constitution of the United States. *Id.* at 1748. Here we are not confronted with the issue of whether preclusion of defense evidence is *per se* unconstitutional, but whether preclusion is mandatory for counsel's noncompliance with OEC 412(3)(c) notice requirements.

[18] Of course, OEC 412 includes a provision for the admissibility of evidence which "[i]s otherwise constitutionally required to be admitted," OEC 412(2)(b)(C), but this provision is not considered under the statutory procedure unless the 15-day notice requirement in OEC 412(3)(a) is first complied with.

[19] In *Taylor v. Illinois, supra,* 484 US at 417, based on the trial court's findings that the defendant's discovery violation amounted to "willful misconduct" and was

determination of whether under this rule preclusion is justified must be made on a case-specific analysis based on the facts of the case, and should be supported by pertinent findings. The basic nature of the judicial inquiry will require the court to follow, to the extent possible under the circumstances,[20] essentially the same sequential steps that it should follow for determining admissibility under OEC 412.[21] The sequential steps of that judicial inquiry are described below.

The trial court in this case ruled that, because defense counsel failed to comply with the 15-day notice requirement of OEC 412(3)(a) and failed to satisfy one of the exceptions to the 15-day notice requirement in OEC 412(3)(a) (which we have determined was correct), preclusion of defense evidence of the alleged victim's past sexual conduct was automatically required, and that the absence of prejudice was irrelevant. That ruling is contrary to the interpretation of OEC 412 that I have stated above. Because of that erroneous ruling, the trial court did not make the necessary judicial inquiry and pertinent findings within the special procedural framework, as set forth in OEC 412(3), within which the admissibility of evidence of the alleged victim's prior sexual conduct must be determined.

---

designed to obtain a "tactical advantage," the Supreme Court determined that "[r]egardless of whether prejudice to the prosecution could have been avoided" by a lesser sanction, "the severest sanction [(preclusion) was] appropriate" and did not violate the Compulsory Process Clause.

[20] The defendant's failure to comply with the notice requirement in OEC 412(3)(a) may prevent the state from adequately arguing against the admissibility of the proffered evidence. In that event, and if preclusion is deemed not to be an appropriate sanction, a final determination on the admissibility of the evidence under OEC 412 will need to be made at a later time.

[21] If the court, in following those sequential steps, determines that the proffered evidence is not admissible under OEC 412, it is irrelevant that the notice requirement was not followed. Following the procedure in this manner will result in a determination in many instances of whether the evidence would be admissible under the statutory guidelines, thereby preventing post-conviction claims for ineffective assistance of trial counsel in cases in which the evidence was precluded for failure to comply with the notice requirement where the evidence was not admissible under the statute even had defendant complied with that requirement.

Of course, because the notice requirement is for the benefit of the state and its witnesses, the state can waive any objection it may have as a result of the defendant's noncompliance with the notice requirement.

I would, therefore, vacate the decision of the Court of Appeals and the judgment of the trial court. I would remand the case to the trial court for further proceedings with instructions. Under OEC 412(3), the trial court first would determine the sufficiency of defense counsel's offer of proof, *i.e.*, whether the offer of proof contains evidence that falls within one of the three exceptions stated in OEC 412(2)(b). OEC 412(3)(b). If the offer of proof is determined to be sufficient, the trial court then would order a hearing in chambers,[22] at which the admissibility of the evidence would be decided in accordance with the procedure set forth in OEC 412(3)(b) and (c). If the trial court determined, on the basis of the hearing, that the evidence that defense counsel sought to offer is relevant, that it falls within one of the three exceptions stated in OEC 412(2)(b), and that the probative value of such evidence outweighs the danger of unfair prejudice,[23] then the evidence offered by defense counsel under OEC 412(2)(b) would "be admissible in the trial to the extent an order by the court specifies evidence which may be offered and areas with respect to which the alleged victim may be examined or cross-examined," OEC 412(3)(c), unless the trial court, based on the facts of record, found that preclusion was permissible under the rule stated above.

After following this procedure on remand, if the trial court determined that the evidence was properly excluded or that preclusion was justified, the trial court should be instructed to reinstate the judgment of conviction. If the trial court determined that the evidence was not properly excluded and that preclusion was impermissible, the trial court would need to determine whether failure to admit the evidence was harmless error.[24] If the trial court determined that the error

[22] *See State ex rel Davey v. Frankel, supra*, 312 Or at 294 (defining meaning of phrase "in chambers" within the context of OEC 412 to mean only that the hearing must take place in the judge's office).

[23] Unlike the balancing required under OEC 403, where the evidence is admissible unless prejudice substantially outweighs probative worth, OEC 412(3)(c) is cast in favor of exclusion.

[24] "[A] verdict against a criminal defendant may be affirmed notwithstanding trial error if the error did not affect a 'substantial right' of the defendant. OEC 103(1). This court has interpreted this to mean that the verdict may be affirmed if there is 'little likelihood' that the error affected the verdict." *State v. Isom*, 306 Or 587, 595-96, 761 P2d 524 (1988) (citing *State v. Hansen*, 304 Or 169, 180-81, 743 P2d 157 (1987)); *see also State v. Williams*, 313 Or 19, 56, 828 P2d 1006 (1992) (Unis, J.,

was harmless, the trial court should be instructed to reinstate the judgment of conviction. If the trial court did not determine that the error was harmless, defendant would be entitled to a new trial and the judgment of conviction would remain vacated.

Following this procedure would avoid the violation of both the state and federal constitutional provisions caused by a *per se* rule of preclusion. Strict application of the statutory rule, as required by the majority, not only violates this court's precedents and this state's constitution, but also violates the federal constitution. *See supra*, 316 Or at 90-96, and accompanying footnotes.

I would reverse the decision of the Court of Appeals, vacate the judgment of the circuit court, and remand this case to the circuit court with instructions. I respectfully dissent.

Van Hoomissen and Fadeley, JJ., join in this dissenting opinion.

---

dissenting) (describing constitutional basis for Oregon's harmless error analysis), and *State v. Walton*, 311 Or 223, 230-31, 809 P2d 81 (1991) (describing constitutional basis for Oregon's harmless error rule and contrasting rule under federal constitution).